```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

GERALD KLEPAREK,

        Petitioner,

v.                                        Case No: 2:14-cv-725-FtM-29MRM

MIKE CARROLL, Secretary, Department of Children and Families,

        Respondent.
_____

## OPINION AND ORDER

Before the Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Gerald Kleparek ("Petitioner") (Doc. 3, filed January 20, 2015). Petitioner, proceeding *pro se*, is civilly detained at the Florida Civil Commitment Center ("FCCC") in Arcadia, Florida. The petition alleges a violation of Petitioner's Fourteenth Amendment rights stemming from a disciplinary report and subsequent hearing that resulted in a guilty finding. Respondent filed a response (Doc. 14), and Petitioner filed a reply (Doc. 18).

### I.  Background and Procedural History

On November 23, 2011, Petitioner was accused of making disrespectful comments to staff at the FCCC.[1] He was charged with

---

[1] The report on this incident stated:

a violation of Facility Rule G-10 – Insolence or Disrespect (Doc. 14-1 at 9). Petitioner was given notice of the violation which stated that "[t]his type of behavior constitutes a minor rule violation and jeopardizes the normal operations and safety of the facility." Id.  A disciplinary hearing was held on November 30, 2011, and Petitioner was found guilty of insolence or disrespect as charged. Id. at 10.  The finding of guilt did not result in the loss of any rights or privileges, but Petitioner asserts that the finding is now a part of his permanent record (Doc. 3 at 8).

Petitioner's appeal of the finding was denied (Doc. 3 at 16). His appeal of the denial was also denied (Doc. 14-1 at 11). Subsequently, Petitioner filed a petition for writ of mandamus in the Circuit Court for the Twelfth Judicial Circuit for DeSoto

---

> On 11-23-11 at approx. 8:10 AM while assigned to Planets, CL Lames called down and requested R/D/ Holley 1084 and R/D Kleparek 903 to come to medical. CI Lande called for both in the dorm. R/D Holley was ready in approx. 10 mins and exited. R/D Kleparek came to the officer'yess window at approx. 8:30 and stated, "I know I had to go but you stupid pople didn't let me know soon enough, so I'm taking my sweet fucking time getting ready."
>
> At 9:00 AM Loreto entered Saturn dorm and told Kleparek "we must go now" "we're late." Kleparek stated, "I'll go when I'm ready." C/O Loreto then stated, "I'll go see the OIC." He then exited.
>
> The OIC was notified and this report written.

(Doc. 14-1 at 8).

County, Florida in which he raised the same claims as raised in the instant habeas petition (Doc. 14 at 1). The circuit court denied the claim, and Florida's Second District Court of Appeal converted Petitioner's appeal to certiorari review and denied the petition. Id. at 2. Subsequently, Petitioner filed a civil rights complaint in this Court against the FCCC and its staff members (MDFL Case No. 2:13-cv-490-FtM-38CM). This Court dismissed the complaint and directed Petitioner to file the instant petition for writ of habeas corpus. Id.

Petitioner filed this habeas petition on January 20, 2015 (Doc. 3). He claims that the disciplinary report is false and that he was denied due process during the hearing. Specifically, he asserts that he was not given advance notice of "other additional charges that may be levied or considered by the disciplinary committee" and that he was not provided with a written statement of the charges of which he was found guilty. Id. at 6-7. Petitioner also asserts that his reputation at the FCCC was harmed by the disciplinary report. Id. at 17. Petitioner alleges that this disciplinary infraction will be considered by the circuit court judge when reviewing his civil detention at the FCCC and could impact the length of his civil detention. Petitioner requests that the Court "remove" the false disciplinary report from his records at the FCCC. Id.

Respondent argues that the petition should be denied or dismissed on the following grounds: (1) the petition is time-barred; (2) Petitioner has not alleged any constitutional injury; (3) Petitioner's claims are moot; (4) the petition is unexhausted; and (5) the violation found was the same as charged in the written notice (Doc. 14).

**II.  Analysis**

In <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), the United States Supreme Court found that due process requires that prisoners who receive discipline resulting in the loss of good-time credits or the imposition of solitary confinement be afforded minimal due process protections.[2]

---

[2] The Court recognizes that Petitioner is not a prisoner. The Supreme Court has concluded that, as a general rule, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." <u>Youngberg v. Romero</u>, 457 U.S. 307, 322 (1982). Indeed, the involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint. <u>Id.</u> The Eleventh Circuit similarly has held that "<u>Youngberg</u> establishes that the due process rights of the involuntarily civilly committed are at least as extensive as the Eighth Amendment rights of the criminally institutionalized, and therefore, relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." <u>Lavender v. Kearney</u>, 206 F. App'x 860, *2 (11th Cir. 2006) (footnote omitted, quoting <u>Dolihite v. Maughon</u>, 74 F.3d 1027, 1041 (11th Cir. 1996) (quotation marks omitted)). Therefore, the case law that has developed under the Eighth Amendment also

The Supreme Court subsequently limited <u>Wolff</u> to situations where a punitive action causes an "atypical significant deprivation" in which a State might conceivably have created a liberty interest. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995). In <u>Sandin</u>, the Court considered a due process claim from an inmate whose disciplinary write-up caused him to be segregated from the normal prison population. The Court stated that:

> Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence.

<u>Id.</u> at 485; <u>see also</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 220 (2009) ("The 14th Amendment's due process clause protects persons against deprivations of life, liberty, or property, and those who seek to invoke its procedural protection must establish that one of these interests is at stake.").

Respondent argues that "[n]either the length of Petitioner's confinement nor the conditions of his confinement were affected in any manner by the record of the Behavior Management Committee's 2011 decision and the Petition does not allege otherwise." (Doc.

---

sets forth the contours of the due process rights of the civilly committed. <u>Id.</u>

14 at 5).³ As a result, argues Respondent, Petitioner has not alleged any "constitutionally cognizable injury." (Doc. 14 at 7). Respondent also urges that "[i]njury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." Id. (citing Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005)). This Court is persuaded by Respondent's argument, and concludes that this situation is governed by the precedent set forth by the Supreme Court in Sandin.

Avoiding a behavior report will not automatically entitle an FCCC patient to release, and it is not the type of liberty interest protected by, and requiring, a Wolff style hearing. See Sandin, 515 U.S. at 487 ("[T]he claim that a finding of misconduct [during prison] will alter the balance [in a parole hearing] is simply too attenuated to invoke the procedural guarantee of the Due Process Clause"); Moulds v. Bullard, 452 F. App'x 851, 854–55 (11th Cir. 2011)(recognizing that, under Sandin, a prisoner is

---

³ In support of this assertion, Respondent attaches an affidavit from the Clinical Director of the FCCC. In the affidavit, Director Rebecca Jackson attests that residents of the FCCC receive a progress report on the anniversary date of their commitment and that these reports provide the committing court "with a review of the resident's progress in treatment and their behavior at the FCCC." (Doc. 14-1 at ¶ 7). Only the progress report submitted on December 11, 2011 refers to the disciplinary report at issue in this petition. Id. The three subsequent reports did not reference the disciplinary report. Id.

"constitutionally entitled to procedural due process" only if deprived of a protected liberty interest that shortens his confinement); Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (prisoner did not suffer a liberty loss when he received as disciplinary punishment a verbal reprimand). In addition, any damage to Petitioner's reputation at the FCCC as a result of the behavior report does not implicate due process concerns. Paul v. Davis, 424 U.S. 693, 701-02 (1976)(injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment). Petitioner has failed to articulate a liberty interest to support a constitutional claim.

Even assuming that the Behavior Management Committee was required to comply with Wolff due process, the record before the Court shows that it did so. The Supreme Court has held that when a prison disciplinary proceeding may result in the loss of good time credits, a prisoner is entitled to the following three minimal procedural protections: (1) advance, written notice of the charges against him and at least 24 hours to prepare a defense; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his own behalf; and (3) a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action. See Wolff, 418 U.S. at 563-66.  Moreover,

"the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board[.]" Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

In the instant case, Petitioner was timely provided with a written notice of the charge against him (Doc. 14-1 at 9). Petitioner admits that he attended the hearing and had the opportunity to present testimony in his defense (Doc. 3 at 14). Petitioner describes what happened afterwards as follows:

> Plaintiff was told by Major Beloff that regardless of what was said or not said, the facility has to conduct operations, and by not leaving on the trip when told caused a disruption. I was in fact guilty of disrupting facility operations. Rebecca Jackson then immediately stated that I would be found to be guilty of a minor violation, and to keep in mind that if I were to receive two more, that this would then constitute a major violation with more severe consequences.

Id. at 14-15. A written "Facility Management Review and Response" was provided to Petitioner (Doc. 14-1). The Wolff requirements were satisfied by the actions of the FCCC staff members.

To the extent Petitioner argues that insufficient evidence existed for the committee's disciplinary finding, the Court disagrees. Petitioner admits that he did not leave for his doctor's appointment when told to do so because he wanted to take a shower (Doc. 3 at 11-12). It was explained that his refusal disrupted facility operations. Id. at 14-15. Petitioner has

alleged facts necessary to show that "some evidence" existed to find him guilty of a minor rule violation. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Hill, 472 U.S. at 456.

Petitioner's argument that he was found guilty of a different infraction than charged is unsupported.  He bases his assertion upon a response to his appeal which read:

> Your grievance appeal is denied.  The disciplinary committee made the determination based upon the facts surrounding the charge, witness statements, etc.  As you left the room, you have no evidence to show the finding was inappropriate.  **If the committee during the hearing discussed other evidence, charges can be changed or additional charges filed.**

(Doc. 14-1 at 11) (emphasis added).  A plain reading of the response suggests that the disciplinary committee made the determination of Petitioner's guilt from "the facts surrounding the charge, witness statements, etc." Id.  Although the response indicated that additional charges could be filed, there is no evidence that any additional charges were actually filed or that Petitioner was found guilty of a different charge than that of which he was provided notice (Doc. 14-1 at 9-10).

### III. Conclusion

Petitioner has neither demonstrated that he was entitled to due process at this disciplinary proceeding or that such process

was denied.  Because Petitioner is not entitled to federal habeas corpus relief, the Court will not address Respondent's remaining grounds for dismissal.

ACCORDINGLY, it is hereby

**ORDERED AND ADJUDGED:**

1. The petition for writ of habeas corpus (Doc. 3) is **DENIED**.

2. The **Clerk of Court** is directed to enter judgment accordingly, terminate any pending motions, and close this case.

### A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability. Id. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 478 (2000); Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001).  Petitioner has not

made the requisite showing in these circumstances and is not entitled to a certificate of appealability.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Fort Myers, Florida on this   5th   day of November, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Gerald Kleparek
Counsel of Record